**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DENNIS M. MULLINS,

    Defendant - Appellant.

No. 14-6191
(D.C. No. 5:13-CR-00264-M-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

Dennis Mullins pled guilty to transporting and receiving child pornography in violation of 18 U.S.C. § 2252(a)(1)-(2). In preparing Mullins' presentence investigation report (PSIR), a U.S. probation officer considered statements from Mullins' adult children alleging Mullins had sexually abused them as minors. Relying on these statements, the probation officer concluded Mullins engaged in "a pattern of activity involving the sexual abuse or exploitation of a minor," and applied a five-level enhancement under U.S.S.G. § 2G2.2(b)(5) resulting in a Guidelines range of

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

262-327 months. Without the enhancement, his advisory Guidelines range would have been 151-188 months. *See* U.S.S.G. ch. 5 pt. A.

Mullins objected to the enhancement on several grounds including because a judge, not a jury, found the facts leading to the enhancement, the alleged conduct occurred 25 to 30 years before the sentencing, and the allegations were hearsay and otherwise unreliable. The district court overruled his objections and, in view of the recommended sentencing range in the PSIR, sentenced Mullins to the statutory maximum 240 months on each count to be served concurrently. Mullins appeals his sentence as violating his Fifth and Sixth Amendment rights and as being unsupported by the evidence. Finding no error in the district court's sentence, we affirm.

**BACKGROUND**

In October 2013, a detective with the Canadian County, Oklahoma Sheriff's Office identified an Internet Protocol (IP) address that appeared to be downloading files depicting child pornography. The detective connected to the IP address using eMule peer-to-peer software and successfully downloaded a 30-minute video depicting child pornography. The sheriff's office obtained a warrant for account information linked to the IP address, determined the account belonged to Mullins, and executed a search warrant on his home. During the search, investigators seized a computer and other digital devices storing over 200 still images and over 400 videos depicting child pornography. The government charged Mullins with transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252(a)(1) and

receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). He pled guilty to both counts.

In preparing Mullins' PSIR, the probation officer calculated a total offense level of 39 and a criminal history category of I. In arriving at this offense level, the probation officer applied a five-level "pattern-of-activity" enhancement under § 2G2.2(b)(5) which provides, "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(5). The Guidelines define "pattern of activity" as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2 cmt. n.1.

At sentencing, a juvenile investigator from the Canadian County Sheriff's Office, Doug Gerten, testified concerning the circumstances supporting the pattern-of-activity enhancement. Gerten testified that during his search of Mullins' residence, Mullins' wife, Rhonda Mullins, informed Gerten that Mullins' two daughters from a prior marriage had accused him of sexually abusing them as minors. She also reported that her son (Mullins' stepson) had recently confronted Mullins about "what he had done." R. vol. 2, at 22 (sealed). Without providing details, Mrs. Mullins implied Mullins had inappropriately touched her son when her son was a minor.

3

In view of these remarks, Gerten and another investigator from the Canadian County Sheriff's Office, Adam Flowers, contacted and interviewed each of Mullins' children.[1]

Gerten interviewed Mullins' oldest daughter, D.L., at her apartment. She told Gerten that when she was 13, Mullins asked to rub her back, but when she sat in front of him for the back rub he instead felt her breasts. When she tried to move away, Mullins pulled her close and put his hand in her underwear. Following the interview, D.L. provided a handwritten statement repeating the allegations. But before Mullins' sentencing, D.L. recanted the portion of her statement accusing Mullins of placing his hand in her underwear.

Flowers interviewed Mullins' younger daughter, J.C., by telephone. J.C. reported that when she was 13, she went to visit her father for two weeks. During this time, Mullins touched her breasts and buttocks, asked her to expose her bare breasts, and watched her bathe and change clothes. At Mullins' direction, J.C. contacted her mother and obtained approval to extend her visit for several months. During these months, Mullins escalated his abuse to include touching J.C. under her clothes and ultimately engaging in sexual intercourse with her. J.C. reported that she lost her

---

[1] To protect the identities of Mullins' children, the government sought permission to file its response brief under seal. The motion was provisionally granted subject to this panel's final approval. Following oral argument, the government filed a brief redacting the children's identities. In light of this publicly available redacted brief, we grant the government's motion to file the original brief under seal. *See, e.g.*, *United States v. Dillard*, 795 F.3d 1191, 1205-06 (10th Cir. 2015) (discussing presumption favoring public access to court records and privacy interests that can overcome presumption).

virginity to Mullins and estimated they had sexual intercourse on 20 occasions. She explained that she only now remembered these events as a result of hypnotherapy.

Gerten and Flowers interviewed Mullins' stepson, M.W., in person. M.W. told investigators that Mullins showed him pornographic material on many occasions, beginning when he was in third grade. Mullins also asked M.W. if he knew how to masturbate, and then demonstrated how to do so. Mullins eventually began masturbating M.W., and did so on more than one occasion. M.W. indicated that initially he trusted Mullins and let Mullins masturbate him, but as he grew older, it began to bother him. Mullins eventually ended the abuse.

Following Gerten's testimony, Mullins addressed the court but neither denied nor confirmed the allegations. Instead, he indicated he couldn't recall any of the alleged incidents. Although M.W. attended the sentencing hearing, neither party called him to testify.

In view of Mullins' children's detailed statements, the district court found by a preponderance of the evidence that Mullins had engaged in a pattern of activity involving the sexual abuse or exploitation of a minor and applied the five-level enhancement to arrive at an offense level of 39, which corresponded to a recommended sentence of 262-327 months' imprisonment.

To fall within this range, the probation officer recommended Mullins be sentenced to the statutory maximum term of 240 months for count I and a term of 22-87 months for count II to run consecutively. Instead, the district court sentenced Mullins to the statutory maximum on each count to be served concurrently, totaling

240 months, a term 22 months below the Guidelines range. Mullins repeatedly

objected to the pattern-of-activity enhancement at sentencing, and now appeals.

DISCUSSION

## I.    The district court's application of the pattern-of-activity enhancement didn't violate Mullins' constitutional rights.

Mullins first argues his sentence is procedurally and substantively

unreasonable because the district court's application of the five-level, pattern-of-

activity enhancement violated his Fifth and Sixth Amendment rights.[2] Because

Mullins properly preserved his objections below, we review the district court's

application of the pattern-of-activity enhancement for abuse of discretion. *Lucero*,

747 F.3d 1242, 1246. This means we "review de novo the district court's legal

conclusions regarding the [G]uidelines and review its factual findings for clear

error." *United States v. Cassius*, 777 F.3d 1093, 1096 (10th Cir. 2015) (quoting

*United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012)).

### A.    Sixth Amendment Right to a Jury Trial

Mullins argues that application of the enhancement violated his Sixth

Amendment rights because a judge rather than a jury found the facts supporting the

---

[2] Although Mullins characterizes his sentencing challenge as both procedural and substantive, his arguments appear purely procedural. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (distinguishing procedural and substantive reasonableness); *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014) (categorizing defendant's appeal of district court's application of pattern-of-activity enhancement under § 2G2.2(b)(5) as procedural). Nonetheless, this court's standard of review (abuse of discretion) is the same under either challenge. *See Lucero*, 747 F.3d at 1251.

enhancement, increasing his Guidelines range from 151-188 months to 262-327 months. This is a purely legal question we review de novo. *Cassius*, 777 F.3d at 1096.

The Sixth Amendment requires a jury, not a judge, find any fact increasing a statutorily prescribed sentence for a crime. *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). But the Guidelines are advisory, not mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). Thus, a judge can find facts supporting a Guidelines enhancement as long as the resulting Guidelines range isn't applied in a binding way altering the prescribed statutory sentence. *See Alleyne*, 133 S. Ct. at 2163; *Cassius*, 777 F.3d at 1097.

Nothing in the record indicates the district court applied the Guidelines in a binding way in this case. Indeed, the opposite is true. The district court sentenced Mullins to 240 months imprisonment, a term below the minimum 262 months recommended by the Guidelines,[3] and within the prescribed statutory range. *See* 18 U.S.C. § 2252(b)(1) (prescribing a statutory sentence of 60 to 240 months for each count). At most, the district court referenced the calculated Guidelines range in determining an appropriate sentence *within the statutory range*. *See Alleyne*, 133 S. Ct. at 2163; *Cassius*, 777 F.3d at 1097 ("[N]othing in the record indicates the district

---

[3] The district court could have ordered Mullins to serve his sentences consecutively. *See* 18 U.S.C. § 3584(a); *Setser v. United States*, 132 S. Ct. 1463, 1468 (2012). Instead, the district court ordered Mullins to serve his two 240-month sentences concurrently, resulting in a total term below the minimum 262 months recommended by the Guidelines.

court increased Defendant's statutory sentencing range or otherwise altered his legally prescribed punishment; rather, by all indications the court used its [own factual] finding *solely as a sentencing factor to help determine Defendant's sentence within the prescribed statutory range*. We find no error in this procedure." (emphasis added)). Under these circumstances, we find no violation of Mullins' Sixth Amendment right to a jury trial.

### B.      Fifth Amendment Right to Due Process

Next, Mullins argues the district court violated his Fifth Amendment right to due process by finding facts supporting the enhancement by a preponderance of the evidence rather than beyond a reasonable doubt and by relying on alleged criminal activity for which the statute of limitations had run. Again, these are purely legal questions we review de novo. *Cassius*, 777 F.3d at 1096.

### 1.      Preponderance of the evidence standard

Mullins contends the district court violated his due process right by applying a preponderance of the evidence standard to factual findings supporting the enhancement. Like Mullins' Sixth Amendment challenge, this argument is foreclosed by precedent.

The Fifth Amendment requires proof beyond a reasonable doubt "of any fact that increases [a] sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." *Booker*, 543 U.S. at 319 n.6; *see also Alleyne*, 133 S. Ct. at 2155; *Apprendi*, 530 U.S. at 490. But facts supporting a Guidelines enhancement need not be proved beyond a reasonable doubt

8

so long as the facts don't increase the prescribed statutory sentence. *United States v. Ray*, 704 F.3d 1307, 1314 (10th Cir. 2013). Instead, a district court is permitted to find facts supporting a Guidelines enhancement by a preponderance of the evidence. *See, e.g.*, *id*; *United States v. Hinson*, 585 F.3d 1328, 1341 n.6 (10th Cir. 2009); *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008).

As we've discussed, the facts found by the district court under a preponderance of the evidence standard didn't alter Mullins' *statutory sentencing range*. Rather, the district court used those facts *to calculate the Guidelines range*. It then used this range, at most, to influence its calculation of an appropriate sentence within the statutory range. This didn't violate Mullins' due process rights.

## 2. Statute of limitations

Mullins next contends the district court violated his Fifth Amendment right to due process by basing the enhancement on alleged criminal activity for which the statute of limitations had run. More particularly, he argues that because the conduct constituting the alleged "sexual abuse or exploitation of a minor" occurred 25 to 30 years before his current sentencing, he couldn't properly defend himself against the allegations.

Again, Mullins' argument contradicts controlling precedent. We've held that statutes of limitations do not bar conduct from being considered at the sentencing phase. *United States v. Griffith*, 584 F.3d 1004, 1013 n.7 (10th Cir. 2009) (concluding conduct may be relevant under the Guidelines even though it can't be separately prosecuted because the statute of limitations has run); *United States v.*

*Neighbors*, 23 F.3d 306, 311 (10th Cir. 1994) (explaining that "[s]tatutes of limitations *play no role* in the sentencing phase of a criminal proceeding" (emphasis added)). Indeed, we recently concluded that the specific pattern-of-activity enhancement at issue here contains no temporal limitations. *Lucero*, 747 F.3d at 1247 (concluding "§ 2G2.2(b)(5) may apply regardless of when the underlying pattern of activity occurred"); *see also id.* at 1249 (citing opinions from nine sister circuits unanimously concluding § 2G2.2(b)(5) contains no temporal limitations).

Mullins urges us to distinguish *Lucero*, arguing (1) we applied plain-error review in that case; (2) Lucero admitted to the conduct supporting the enhancement; and (3) Lucero didn't make the Sixth and Fifth Amendment arguments made here.

Mullins misreads *Lucero*. There, we declined to decide the appropriate standard of review because Lucero's claim failed under either plain-error or abuse-of-discretion review. *Id.* at 1247. Further, we see no indication that Lucero's admission of the underlying conduct impacted our decision in that case; nor do we see the relevance of such an admission to the legal question at issue—whether § 2G2.2(b)(5) includes a temporal limitation.

We are similarly unpersuaded by Mullins' effort to distinguish *Lucero* based on Lucero's failure to assert the constitutional challenges raised here. We have previously rejected the suggestion that the Fifth and Sixth Amendments require facts supporting a Guidelines sentencing enhancement be submitted to a jury and proved beyond a reasonable doubt, *see, e.g.*, *Ray*, 704 F.3d at 1314, and we see no reason why *Lucero*'s outcome would differ had the court considered such arguments.

10

Further, at least some of our sister circuits have considered and rejected Mullins' remaining constitutional challenge—that requiring him to defend against remote-in-time conduct violates his due process rights. *See United States v. Bacon*, 646 F.3d 218, 221-22 (5th Cir. 2011); *United States v. Garner*, 490 F.3d 739, 743 (9th Cir. 2007). The Fifth Circuit's rationale for permitting a pattern-of-activity enhancement in cases concerning sexual abuse and exploitation of children is particularly persuasive:

> Consideration of remote-in-time conduct does not violate due process. A guideline violates due process only if it has no rational basis or is subject to arbitrary application. This court has frequently noted the increased risk of recidivism associated with the sexual abuse and exploitation of children. Therefore, the consideration of even remote-in-time conduct is not irrational in applying the "pattern of activity" enhancement.

*Bacon,* 646 F.3d at 221-22 (internal citations omitted); *see also Garner*, 490 F.3d at 743 (same).

We agree with our sister circuits that consideration of remote-in-time conduct doesn't raise due process concerns in cases involving the sexual abuse and exploitation of children. Accordingly, Mullins' attempts to distinguish *Lucero* are unavailing.

In an effort to distinguish our binding precedent in *Cassius*, *Lucero*, and *Cook*, Mullins advances an additional argument for the first time in his reply brief. Namely, he points out that sentencing enhancements typically are applied on the basis of "relevant conduct" as defined in § 1B1.3 of the Guidelines—that is, conduct that is factually and temporally limited to the charged offense. He urges us to avoid

11

extending our precedent to the instant pattern-of-activity enhancement because the conduct underlying this enhancement is arguably unrelated, and thus should be afforded additional procedural safeguards.

Mullins failure to raise this argument in his opening brief results in a waiver of the issue. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). Regardless, the Guidelines contradict his position. *See* U.S.S.G. § 2G2.2 cmt. n.1 ("'Pattern of activity involving the sexual abuse of exploitation of a minor' means *any* combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, *whether or not the abuse or exploitation (A) occurred during the course of the offense; [or] (B) involved the same minor . . . .*" (emphasis added)). More importantly, this argument can't withstand *Lucero*'s specific holding. 747 F.3d at 1247 ("[T]he commentary to § 2G2.2(b)(5) makes clear that the pattern of activity *need not be contextually related to the offense for which the defendant is being sentenced*." (emphasis added)); *see also Bacon*, 646 F.3d at 221 (finding no temporal or contextual constraint in applying § 2G2.2(b)(5) and noting "'relevant conduct' under § 2G2.2 is intended to be more broadly construed than the general relevancy provisions found in § 1B1.3"). We thus hold the district court didn't violate Mullins' Fifth Amendment due process rights.

## II.     The record supports the district court's application of the pattern-of-activity enhancement.

Relying on the statements of Mullins' children, the district court found by a preponderance of the evidence that Mullins engaged in a pattern of activity involving

the sexual abuse or exploitation of a minor. On appeal, Mullins argues the allegations by his adult children are unreliable and thus insufficient to support the enhancement because each accuser failed to provide specific details regarding the time and location of the alleged incidents, the incidents weren't contemporaneously investigated by law enforcement, and the accusations are hearsay. He further contends the alleged misconduct towards D.L. isn't "sexual abuse or exploitation of a minor" as defined by § 2G2.2(b)(5) because over-the-clothes touching doesn't constitute a "sexual act."[4] And he argues J.C.'s statement is additionally unreliable because it resulted from posthypnotic recall.

We review the district court's factual findings for clear error. *Cassius*, 777 F.3d at 1096; *Cook*, 550 F.3d at 1295. "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Torres*, 53 F.3d 1129, 1144 (10th Cir. 1995).

Sentencing hearings aren't subject to rules of evidence. 18 U.S.C. § 3661; U.S.S.G. §§ 1B1.4, 6A1.3(a); *United States v. Ruby*, 706 F.3d 1221, 1227 (10th Cir. 2013). Instead, "[s]entencing courts historically rely on a wide array of information

---

[4] D.L. initially said Mullins placed his hand in her underwear, but later withdrew this statement, leaving only her allegation that Mullins touched her breasts when she was 13. The Guidelines define "sexual abuse or exploitation of a minor" as conduct described in, among other sections irrelevant here, 18 U.S.C. §§ 2241-2243. U.S.S.G. § 2G2.2 cmt. n.1. Each of those provisions require a "sexual act," which, as defined in 18 U.S.C. § 2246(2), doesn't include over-the-clothes touching.

13

relevant to the individualized needs of the offender, including hearsay evidence containing a minimal indicia of reliability." *Ruby*, 706 F.3d at 1227.

For example, we've held a district court didn't err in granting an upward variance from the Guidelines range based on detectives' testimony regarding interviews with alleged sexual-abuse victims. *United States v. Caiba-Antele*, 705 F.3d 1162, 1166 (10th Cir. 2012). There, we found the testimony sufficiently reliable because the detectives observed the victims firsthand, each victim's testimony corroborated the type of abuse testified to by the others, and the victims didn't change their testimony after initial interviews. *Id*. Similarly, we've upheld a district court's application of a felony-menacing enhancement based on a police report containing witnesses' accounts of a crime because officers personally observed the witnesses and the witnesses corroborated each other. *Cook*, 550 F.3d at 1297.

On the other hand, we've reversed the district court's application of a felonious-assault enhancement based on a probation officer's report containing statements from a defendant's girlfriend. *United States v. Fennell*, 65 F.3d 812, 813 (10th Cir. 1995). There, we concluded the report lacked minimal indicia of reliability because it included only the girlfriend's unsworn allegations made during a telephone interview. *Id.*

With this precedent as background, we first consider the investigators' interview of M.W., Mullins' stepson. Gerten and Flowers personally interviewed M.W. and thus could observe his demeanor and form opinions as to his veracity. Further, Mrs. Mullins corroborated M.W.'s statements to some extent when she

14

reported to Gerten that M.W. had recently confronted Mullins about "what he had done" and she implied that Mullins had inappropriately touched her son. R. vol. 2, at 22 (sealed). Perhaps most significant, when Mullins addressed the sentencing court, he didn't deny that the abuse occurred, nor did he call M.W. to testify or confront him about the allegations even though M.W. attended the sentencing hearing.

Moreover, although Mullins' attacks the reliability of his daughters' statements, pointing out that D.L. withdrew her statement in part and J.C.'s statement resulted from hypnotherapy, we conclude M.W.'s testimony alone is sufficient to support the pattern-of-activity enhancement. The Guidelines define a "pattern of activity" as "any combination of *two or more* separate instances of the sexual abuse or sexual exploitation of a minor by the defendant." U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added). M.W. described to Gerten sexual abuse that occurred "[o]ver a period of time." R. vol. 2, at 25 (sealed). M.W. said Mullins began showing him pornographic images when he was in the third grade and continued to show him increasingly "bizarre" images. *Id.* Mullins later showed M.W. how to masturbate and "eventually started" masturbating M.W. M.W. told Gerten that he trusted Mullins and initially didn't think Mullins actions were wrong, but "it bothered him as he got older," and Mullins "eventually stopped." *Id.*

Under these circumstances, we conclude the district court could reasonably have concluded Gerten's testimony regarding his in-person interview of M.W. contained sufficient indicia of reliability. Further, M.W.'s statements to Gerten established that Mullins engaged in two or more separate instances of sexual abuse

15

and supported application of the pattern-of-activity enhancement. Thus, without deciding the independent reliability of Mullins' daughters' statements, we conclude the district court didn't clearly err in applying the enhancement.

## CONCLUSION

We find no constitutional defect in the district court finding facts by a preponderance of the evidence to determine a nonbinding sentencing range under the Guidelines. And we find no clear error in the district court's evidentiary findings that support the pattern-of-activity enhancement. Accordingly, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge